JOHN S. LEONARDO
United States Attorney
District of Arizona

JENNIFER LEVINSON
Assistant U.S. Attorney
Arizona State Bar No. 020551
jennifer.levinson@usdoj.gov

PETER SEXTON
Assistant U.S. Attorney
Arizona State Bar No. 011089
Peter.Sexton@usdoj.gov

Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
jennifer.levinson@usdoj.gov

```
_____ FILED        ✓ _____ LODGED
_____ RECEIVED  _____ COPY

        APR 2 6 2013

   CLERK U S DISTRICT COURT
     DISTRICT OF ARIZONA
BY_____ DEPUTY
```

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                  Plaintiff,<br><br>         v.<br><br>Austin Lorenzo Gaysue,<br><br>                  Defendant. | CR-13-00320-PHX-ROS<br><br>**PLEA AGREEMENT** |

Plaintiff, United States of America, and the defendant, Austin Lorenzo Gaysue, hereby agree to dispose of this matter on the following terms and conditions:

1.    **PLEA**

The defendant will plead guilty to Count 1 of the Indictment.  Count One charges the defendant with conspiracy to distribute and possess with intent to distribute oxycodone, a Schedule II controlled substance, a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846, a Class C felony offense.

2.    **MAXIMUM PENALTIES**

a.    A violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 846 is punishable by a maximum fine of $1,000,000, a maximum term of imprisonment of 20 years, or both, and a term of supervised release of 3 years.  If probation is imposed, the maximum term of probation is five years.

b.     According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1)     make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2)     pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3)     serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4)     pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

c.     The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d.     The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including defendant's attorney or the district court, can predict to a certainty the effect of defendant's conviction on defendant's immigration status in the United States. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is defendant's automatic removal from the United States.

3.     **COOPERATION REQUIRED**

a.     If requested by the United States, the defendant shall meet with representatives of the United States at any reasonable time and place and, in such meetings, shall (i) waive the Fifth

1  Amendment privilege against self-incrimination; (ii) answer all questions asked about any topic
2  whatsoever; and (iii) provide full and complete information about the topics discussed in each
3  interview, if necessary by volunteering information about which no questions are asked.

4       b.      If requested by the United States, the defendant shall deliver to the United States
5  any documents and other items to which the defendant has access.

6       c.      If requested by the United States, the defendant shall testify at any time and place
7  and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

8       d.      All information, evidence, and testimony provided by the defendant pursuant to
9  this Plea Agreement, on any topic whatsoever, shall be truthful, honest, candid, and complete
10 with no knowing and material omissions or false statements.  The defendant shall not attempt
11 to either protect or falsely implicate any person or entity through false information or omission.

12      e.      The defendant shall work undercover only under the direct supervision of law
13 enforcement officers and with the prior approval of the Court.

14      f.      The defendant shall notify the United States as soon as possible of any interactions
15 or contacts with any subject or target of any ongoing criminal investigation, any criminal
16 defendant, or their respective counsel or associates.

17      g.      The defendant shall not violate any local, state, federal or foreign laws. The defen-
18 dant shall comply with all terms and conditions of the defendant's pre-trial release.

19      h.      The defendant shall request sentencing be deferred for a period of six months.
20 After such period, if the United States wishes for the defendant's cooperation to continue, the
21 defendant shall not oppose any motions to continue the defendant's sentencing.

22      i.      Prior to the defendant's sentencing, the United States shall in good faith consider
23 moving the Court to depart downward from the Sentencing Guidelines, and if applicable impose
24 a sentence below the level established by law as the minimum sentence, pursuant to Section
25 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), respectively.

26      j.      At sentencing and any other appropriate time, the United States shall bring the
27 nature and extent of the defendant's cooperation to the attention of the Court and/or the Federal
28 Bureau of Prisons.

3

1    k.    If the defendant fails to comply with any of the defendant's obligations or promises
2    set forth in the Plea Agreement, the United States may:

3         (1)    in its sole and absolute discretion, declare any provision of the Plea
4    Agreement null and void, without giving the defendant any right or option to withdraw from the
5    Plea Agreement or the plea of guilty;

6         (2)    recommend any sentence, up to and including the statutory maximum
7    sentence;

8         (3)    prosecute the defendant, or reinstitute prosecution of the defendant, for any
9    and all crimes committed by the defendant, notwithstanding the Statute of Limitations, the
10   Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

11        (4)    use in any manner, and in any proceeding, any evidence provided by the
12   defendant before or after execution of this Plea Agreement; and

13        (5)    advise the Bureau of Prisons that the defendant is no longer a cooperating
14   witness, and recommend redesignation of the defendant to a higher custodial level.

15   l.    If there is a dispute regarding the obligations of the parties under this agreement,
16   the United States District Court shall determine whether the United States or the defendant has
17   failed to comply with this agreement including whether the defendant has been truthful.

18   **4.    UNDERSTANDINGS REGARDING SENTENCING**

19   a.    Stipulation. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the
20   defendant stipulate that, based on the conversion of oxycodone to marijuana, the defendant's
21   relevant conduct is approximately between 3,000 and 10,000 kilograms of marijuana pursuant
22   to USSG §§ 2D1.1  for a Base Offense Level of 34, prior to adjustments.  The parties further
23   stipulate that the defendant's sentence shall not exceed the low end of the applicable sentencing
24   guideline range.

25   b.    Acceptance of Responsibility.  If the defendant makes full and complete disclo-
26   sure to the U.S. Probation Office of the circumstances surrounding the defendant's commission
27   of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense
28   up to and including the time of sentencing, the United States will recommend a two-level

4

1 reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G.§ 3E1.1(a).

2 If the defendant has an offense level of 16 or more, the United States will recommend an

3 additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant

4 to U.S.S.G. § 3E1.1(b). The USAO reserves the right to change this recommendation if

5 defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to

6 obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of

7 responsibility as explained in USSG § 3E1.1.

8 **5.**      **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

9      a.      Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss Counts

10 2-21 of the Indictment as to the defendant.

11      b.      The United States Attorney's Office for the District of Arizona agrees not to file

12 additional criminal charges against the defendant for activity known by the Government to date

13 regarding the defendant's involvement in the drug trafficking organization that is the subject of

14 the Indictment.

15      c.      This agreement does not, in any manner, restrict the actions of the United States

16 in any other district or bind any other federal, state, or local prosecuting, administrative, or

17 regulatory authority.

18 **6.**      **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

19      If the Court, after reviewing this plea agreement, concludes that any provision contained

20 herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity

21 to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

22      If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or

23 reversed at any time, this agreement shall be null and void, the United States shall be free to

24 prosecute the defendant for all crimes of which it then has knowledge and any charges that have

25 been dismissed because of this plea agreement shall automatically be reinstated. In such event,

26 the defendant waives any and all objections, motions, and defenses based upon the Statute of

27 Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or

28 proceedings. The defendant understands that any statements made at the time of the defendant's

1  change of plea or sentencing may be used against the defendant in any subsequent hearing, trial,

2  or proceeding subject to the limitations of Fed. R. Evid. 410.

3

4  **7.    WAIVER OF DEFENSES AND APPEAL RIGHTS**

5        Providing the defendant's sentence is consistent with this agreement, the defendant

6  waives (1) any and all motions, defenses, probable cause determinations, and objections that the

7  defendant could assert to the indictment or information; and (2) any right to file an appeal, any

8  collateral attack, and any other writ or motion that challenges the conviction, an order of

9  restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the

10 defendant's sentence, including the manner in which the sentence is determined, including but

11 not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28

12 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of

13 sentence, including under Title 18, United States Code, Section 3582(c).   The defendant

14 acknowledges that if the Court has sentenced the defendant according to the terms of this

15 agreement, this waiver shall result in the dismissal of any appeal, collateral attack, or other

16 motion the defendant might file challenging the conviction, order of restitution or forfeiture, or

17 sentence in this case.

18 **8.    DISCLOSURE OF INFORMATION**

19        a.    The United States retains the unrestricted right to provide information and make

20 any and all statements it deems appropriate to the U.S. Probation Office and to the Court in

21 connection with the case.

22        b.    Any information, statements, documents, and evidence that the defendant provides

23 to the United States pursuant to this agreement may be used against the defendant at any time.

24        c.    The defendant shall cooperate fully with the U.S. Probation Office.  Such

25 cooperation shall include providing complete and truthful responses to questions posed by the

26 U.S. Probation Office including, but not limited to, questions relating to:

27              (1)    criminal convictions, history of drug abuse, and mental illness; and

28

(2)     financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

///

## 9.     FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture or other civil action. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 10.     ELEMENTS

Conspiracy to Possess with the Intent To Distribute Oxycodone includes the following elements:

1.     There was an agreement between two or more persons to commit the crime of possession with intent to distribute oxycodone, a Schedule II controlled substance;

2.     The defendant became a member of the conspiracy, knowing of at least one of its objects and intending to help accomplish it.

Possession with the Intent to Distribute Oxycodone includes the following elements:

1.     The defendant knowingly possessed oxycodone, a Schedule II controlled substance;

2.     The defendant possessed the oxycodone with the intent to deliver it to another person.

## 11.     FACTUAL BASIS

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt (the

1   facts set forth below are not meant to be an exhaustive account of the defendant's knowledge

2   of, or involvement in, the conspiracy to which he is pleading guilty):

3          Beginning at a date unknown, but from at least March of 2010, to March 2011, in the

4   District of Arizona, and elsewhere, I agreed and conspired with Roman Avezov ("Avezov"),

5   Chad Mitchell Davis ("Davis"), Ryan James Aird, Jared Daniel Riley ("Riley"), Stanislov

6   Avezov, Joselle Kate Bautista, Milton Santiago Troche ("Troche"), Jordan Haley, Jayde Solivan,

7   Carter Mitchell, Elyzabeth Leitner, Bradley Sean Casper ("Casper"), Kristoffer Kjelby, and

8   others to distribute and possess with intent to distribute oxycodone. I entered into the conspiracy

9   knowing that its object was to distribute and possess with intent to distribute oxycodone and I

10  intended to help accomplish that objective.

11         Avezov led the conspiracy that involved creating forged prescriptions for oxycodone and

12  filling them at various pharmacies throughout the United States using false identities. The object

13  of the conspiracy was to obtain large quantities of oxycodone that would later be sold for profit.

14  The conspiracy was based in Arizona, and, while some prescriptions were filled in Arizona,

15  many were filled outside of Arizona.

16         With some variation, when traveling outside of Arizona, the conspiracy generally

17  proceeded as follows:  Avezov chose a location within the United States to which he sent a

18  group of his co-conspirators to fill fraudulent oxycodone prescriptions.  The group usually

19  consisted of "driver"/"filler" teams and typically at least one additional person to monitor police

20  radios and complete other tasks such as printing the prescriptions and directing the teams (these

21  tasks were often completed by Davis or Riley).  The drivers transported the fillers from one

22  pharmacy to another and watched for police while the filler went into the pharmacy to fill the

23  prescriptions. Typically, each prescription was for 180 30mg oxycodone pills. The prescriptions

24  were filled on nights and weekends when the doctors' offices were closed and the pharmacies

25  were unable to reach the "prescribing" physicians.

26         To ensure that the pharmacies could not contact the "prescribing" physicians to verify

27  the prescriptions, we looked up and called doctors' offices in the target area to determine

28  whether they had an after-hours answering service. The doctors who did not have an answering

1   service were chosen as the "prescribing" physicians.  We then looked up the "prescribing"

2   physicians' DEA registration numbers via a subscription-only website to which Avezov had

3   access.

4       Before leaving Arizona, Avezov had Troche create a number of fake driver's licenses

5   containing the fillers' pictures and fictitious biographical information.  (Santiago created one

6   driver's license for each prescription that was to be filled, each containing a different name, but

7   generally the same birth date for each filler.)  Avezov also provided prescription security paper

8   and cash for the trips.  Typically, one of the co-conspirators, often Casper, rented vehicles in

9   Arizona and the group would drive to the location chosen by Avezov.  Once we arrived at our

10  destination, we obtained hotel rooms using fake identification.  The pills were pooled and given

11  to Avezov once we returned to Arizona.  Avezov paid the participants, typically based on the

12  number of pills obtained, and sold (or gave) pills to a number of people including his brother,

13  Stanislov Avezov, Chad Davis and myself, for further distribution.

14      My role during the course of the conspiracy was generally that of a driver and seller

15  although I occasionally acted as a filler.  I also performed miscellaneous tasks for the group such

16  as occasionally ordering the prescription security paper for Avezov.  I helped the group

17  fill/attempt to fill prescriptions in Arizona, Nevada, Utah, Oklahoma, Oregon, Colorado,

18  Washington, and Virginia.

19      The defendant shall swear under oath to the accuracy of this statement and, if the

20  defendant should be called upon to testify about this matter in the future, any intentional material

21  inconsistencies in the defendant's testimony may subject the defendant to additional penalties

22  for perjury or false swearing, which may be enforced by the United States under this agreement.

23      **APPROVAL AND ACCEPTANCE OF THE DEFENDANT**

24      I have read the entire plea agreement with the assistance of my attorney. I understand each

25  of its provisions and I voluntarily agree to it.

26      I have discussed the case and my constitutional and other rights with my attorney.  I

27  understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial

28  by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence

9

1   in my defense, to remain silent and refuse to be a witness against myself by asserting my

2   privilege against self-incrimination, all with the assistance of counsel, and to be presumed

3   innocent until proven guilty beyond a reasonable doubt.

4       I agree to enter my guilty plea as indicated above on the terms and conditions set forth

5   in this agreement.

6       I have been advised by my attorney of the nature of the charges to which I am entering

7   my guilty plea.  I have further been advised by my attorney of the nature and range of the

8   possible sentence and that my ultimate sentence shall be determined by the Court after

9   consideration of the advisory Sentencing Guidelines.

10      My guilty plea is not the result of force, threats, assurances, or promises, other than the

11  promises contained in this agreement. I voluntarily agree to the provisions of this agreement and

12  I agree to be bound according to its provisions.

13      I understand that if I am granted probation or placed on supervised release by the Court,

14  the terms and conditions of such probation/supervised release are subject to modification at any

15  time. I further understand that if I violate any of the conditions of my probation/supervised

16  release, my probation/supervised release may be revoked and upon such revocation,

17  notwithstanding any other provision of this agreement, I may be required to serve a term of

18  imprisonment or my sentence otherwise may be altered.

19      This written plea agreement, and any written addenda filed as attachments to this plea

20  agreement, contain all the terms and conditions of the plea.  Any additional agreements, if any

21  such agreements exist, shall be recorded in a separate document and may be filed with the Court

22  under seal; accordingly, additional agreements, if any, may not be in the public record.

23      I further agree that promises, including any predictions as to the Sentencing Guideline

24  range or to any Sentencing Guideline factors that will apply, made by anyone (including my

25  attorney) that are not contained within this written plea agreement, are null and void and have

26  no force and effect.

27      I am satisfied that my defense attorney has represented me in a competent manner.

28

10

1    I fully understand the terms and conditions of this plea agreement.  I am not now using

2  or under the influence of any drug, medication, liquor, or other intoxicant or depressant that

3  ///

4

5  would impair my ability to fully understand the terms and conditions of this plea agreement.

6

7

8  Date  4/26/13                                    _____
                                                    AUSTIN LORENZO GAYSUE
9                                                   Defendant

10

11                          **APPROVAL OF DEFENSE COUNSEL**

12    I have discussed this case and the plea agreement with my client in detail and have

13  advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional

14  and other rights of an accused, the factual basis for and the nature of the offense to which the

15  guilty plea will be entered, possible defenses, and the consequences of the guilty plea including

16  the maximum statutory sentence possible.  I have further discussed the concept of the advisory

17  Sentencing Guidelines with the defendant.  No assurances, promises, or representations have

18  been given to me or to the defendant by the United States or any of its representatives that are

19  not contained in this written agreement. I concur in the entry of the plea as indicated above and

20  that the terms and conditions set forth in this agreement are in the best interests of my client.  I

21  agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all

22  the requirements of Fed. R. Crim. P. 11.

23

24  4-26-13

25  Date                                            _____
                                                    MICHAEL RYAN
26                                                  Attorney for Defendant

27

28

                                          11

1

## APPROVAL OF THE UNITED STATES

2       I have reviewed this matter and the plea agreement.  I agree on behalf of the United States

3 that the terms and conditions set forth herein are appropriate and are in the best interests of

4 justice.

5                                      JOHN S. LEONARDO
                                       United States Attorney

6                                        District of Arizona

7

8 4/26/13
  Date

9                                        JENNIFER LEVINSON
                                       PETER SEXTON
                                       Assistant U.S. Attorneys

10

11

## ACCEPTANCE BY THE COURT

12

13
  Date                                        ROSLYN O. SILVER

14                                        United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28