```
         FILED ___   ✓ LODGED
         RECEIVED ___  COPY

         AUG 0 5 2013

      CLERK U S DISTRICT COURT
        DISTRICT OF ARIZONA
      BY_____ DEPUTY
```

JOHN S. LEONARDO
United States Attorney
District of Arizona

JENNIFER LEVINSON
Assistant U.S. Attorney
Arizona State Bar No. 020551
jennifer.levinson@usdoj.gov

PETER SEXTON
Assistant U.S. Attorney
Arizona State Bar No. 011089
Peter.Sexton@usdoj.gov

Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
jennifer.levinson@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| United States of America, | CR-13-00320-003-PHX-ROS (BSB) |
|---|---|
| Plaintiff, | |
| v.  Lee Kwa (signature) | **PLEA AGREEMENT** |
| Kristoffer Kjelby, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Kristoffer Kjelby, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the Indictment. Count One charges the defendant with conspiracy to distribute and possess with intent to distribute oxycodone, a Schedule II controlled substance, a violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and 846, a Class C felony offense.

2. **MAXIMUM PENALTIES**

   a.  A violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 846 is punishable by a maximum fine of $1,000,000, a maximum term of imprisonment of 20 years, or both, and a term of supervised release of 3 years. If probation is imposed, the maximum term of probation is five years.

b.  According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

(1) make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution would not be appropriate;

(2) pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

(3) serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

(4) pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013(a)(2)(A).

c.  The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

d.  The defendant recognizes that pleading guilty may have consequences with respect to his immigration status if defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including defendant's attorney or the district court, can predict to a certainty the effect of defendant's conviction on defendant's immigration status in the United States. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that this plea may entail, even if the consequence is defendant's automatic removal from the United States.

3.  **COOPERATION REQUIRED**

a.  If requested by the United States, the defendant shall meet with representatives of the United States at any reasonable time and place and, in such meetings, shall (i) waive the Fifth

Amendment privilege against self-incrimination; (ii) answer all questions asked about any topic whatsoever; and (iii) provide full and complete information about the topics discussed in each interview, if necessary by volunteering information about which no questions are asked.

      b.    If requested by the United States, the defendant shall deliver to the United States any documents and other items to which the defendant has access.

      c.    If requested by the United States, the defendant shall testify at any time and place and, when testifying, shall not invoke the Fifth Amendment privilege against self-incrimination.

      d.    All information, evidence, and testimony provided by the defendant pursuant to this Plea Agreement, on any topic whatsoever, shall be truthful, honest, candid, and complete with no knowing and material omissions or false statements. The defendant shall not attempt to either protect or falsely implicate any person or entity through false information or omission.

      e.    The defendant shall work undercover only under the direct supervision of law enforcement officers and with the prior approval of the Court.

      f.    The defendant shall notify the United States as soon as possible of any interactions or contacts with any subject or target of any ongoing criminal investigation, any criminal defendant, or their respective counsel or associates.

      g.    The defendant shall not violate any local, state, federal or foreign laws. The defendant shall comply with all terms and conditions of the defendant's pre-trial release.

      h.    The defendant shall request sentencing be deferred for a period of six months. After such period, if the United States wishes for the defendant's cooperation to continue, the defendant shall not oppose any motions to continue the defendant's sentencing.

      i.    Prior to the defendant's sentencing, the United States shall in good faith consider moving the Court to depart downward from the Sentencing Guidelines, and if applicable impose a sentence below the level established by law as the minimum sentence, pursuant to Section 5K1.1 of the Sentencing Guidelines and 18 U.S.C. § 3553(e), respectively.

      j.    At sentencing and any other appropriate time, the United States shall bring the nature and extent of the defendant's cooperation to the attention of the Court and/or the Federal Bureau of Prisons.

  k. If the defendant fails to comply with any of the defendant's obligations or promises set forth in the Plea Agreement, the United States may:

    (1) in its sole and absolute discretion, declare any provision of the Plea Agreement null and void, without giving the defendant any right or option to withdraw from the Plea Agreement or the plea of guilty;

    (2) recommend any sentence, up to and including the statutory maximum sentence;

    (3) prosecute the defendant, or reinstitute prosecution of the defendant, for any and all crimes committed by the defendant, notwithstanding the Statute of Limitations, the Speedy Trial Act, and any constitutional restrictions in bringing later proceedings;

    (4) use in any manner, and in any proceeding, any evidence provided by the defendant before or after execution of this Plea Agreement; and

    (5) advise the Bureau of Prisons that the defendant is no longer a cooperating witness, and recommend redesignation of the defendant to a higher custodial level.

  l. If there is a dispute regarding the obligations of the parties under this agreement, the United States District Court shall determine whether the United States or the defendant has failed to comply with this agreement including whether the defendant has been truthful.

**4.** **UNDERSTANDINGS REGARDING SENTENCING**

  a. <u>Stipulation.</u> Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that, based on the conversion of oxycodone to marijuana, the defendant's relevant conduct is at least 700 but less than 1,000 kilograms of marijuana pursuant to USSG §§ 2D1.1(c) for a Base Offense Level of 30, prior to adjustments. The parties further stipulate that the defendant's sentence shall not exceed the low end of the applicable sentencing guideline range.

  b. <u>Acceptance of Responsibility.</u> If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level

reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will recommend an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b). The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

5.   **AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

   a.   Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States shall dismiss Counts 2-21 of the Indictment as to the defendant.

   b.   The United States Attorney's Office for the District of Arizona agrees not to file additional criminal charges against the defendant for activity known by the Government to date regarding the defendant's involvement in the drug trafficking organization that is the subject of the Indictment.

   c.   This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other federal, state, or local prosecuting, administrative, or regulatory authority.

6.   **COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

   If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

   If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's

change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

### 7. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under Title 18, United States Code, Section 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case.

### 8. **DISCLOSURE OF INFORMATION**

a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

    (1) criminal convictions, history of drug abuse, and mental illness; and

    (2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 9. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture or other civil action. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 10. ELEMENTS

Conspiracy to Possess with the Intent To Distribute Oxycodone includes the following elements:

1. There was an agreement between two or more persons to commit the crime of possession with intent to distribute oxycodone, a Schedule II controlled substance;

2. The defendant became a member of the conspiracy, knowing of at least one of its objects and intending to help accomplish it.

Possession with the Intent to Distribute Oxycodone includes the following elements:

1. The defendant knowingly possessed oxycodone, a Schedule II controlled substance;

2. The defendant possessed the oxycodone with the intent to deliver it to another person.

## 11. FACTUAL BASIS

The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt (the facts set forth below are not meant to be an exhaustive account of the defendant's knowledge of, or involvement in, the conspiracy to which he is pleading guilty):

Beginning at a date unknown, but from approximately March of 2010 through March 2011, in the District of Arizona and elsewhere, I agreed and conspired with, Roman Avezov

("Avezov"), Jared Daniel Riley ("Riley"), Bradley Casper ("Casper"), Chad Davis ("Davis"), Austin Lorenzo Gaysue ("Gaysue"), Joselle Kate Bautista ("Bautista"), S.A., Milton Santiago Troche ("Troche"), Elyzabeth Leitner ("Leitner") and others to distribute and possess with intent to distribute oxycodone. I entered into the conspiracy knowing that its object was to distribute and possess with intent to distribute oxycodone and I intended to help accomplish that objective.

Avezov led the conspiracy in which he and others created forged prescriptions for oxycodone that his conspirators filled at various pharmacies throughout the United States using false identities. The object of the conspiracy was to obtain large quantities of oxycodone that would later be sold on the street for profit. The conspiracy was based in Arizona, and, while some prescriptions were filled in Arizona, many were filled outside of Arizona.

With some variation, when traveling outside of Arizona, the conspiracy generally proceeded as follows: Avezov chose a location within the United States to which he sent a group of his co-conspirators to fill fraudulent oxycodone prescriptions. The group usually consisted of "driver"/"filler" teams and a "team leader" (either Davis or Riley when Avezov was not present) who would monitor police radios and complete other tasks such as printing the prescriptions. The drivers transported the fillers from one pharmacy to another and watched for police while the filler went into the pharmacy to fill the prescriptions.

Typically, each prescription was for 180 30mg oxycodone pills. The prescriptions were filled on nights and weekends when the doctors' offices were closed and the pharmacies were unable to reach the "prescribing" physicians. To ensure that the pharmacies could not contact the "prescribing" physicians to verify the prescriptions, they looked up and called doctors' offices in the target area to determine whether they had an after-hours answering service. The doctors who did not have an answering service were chosen as the "prescribing" physicians.

Before leaving Arizona, Avezov had Troche create a number of fake driver's licenses containing the fillers' pictures and fictitious biographical information. (Troche created one driver's license for each prescription that was to be filled, each containing a different name, but generally the same birth date for each filler.) Avezov also provided prescription security paper,

a computer and cash for the trips. The pills we obtained during a trip were pooled and given to Avezov or Davis once we returned to Arizona for later sale.

I joined the conspiracy in or around April 2010 when Riley asked me to fill prescriptions for the group. My role during the course of the conspiracy was that of a driver or filler. I helped the group fill prescriptions in Arizona, Oklahoma, and Oregon.

The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire plea agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

6/2/2013
Date

KRISTOFFER KJELBY
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory

Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

08/02/2013
Date

DAVID EISENBERG
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

8/5/13
Date

JENNIFER LEVINSON
PETER SEXTON
Assistant U.S. Attorneys

**ACCEPTANCE BY THE COURT**

Date

ROSLYN O. SILVER
United States District Judge